# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY HORNE,

      **Plaintiff,**

vs.

                                                    **No. 17-cv-154-DRH-RJD**

CITY OF BELLEVILLE,

      **Defendant.**

## AMENDED MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

Pending before the Court is a Motion for Summary Judgment submitted by Defendant City of Belleville ("Defendant" or "City") on March 16, 2018. (Doc. 42). Plaintiff Larry Horne ("Plaintiff" or "Horne") offered on April 26, 2018 a response in opposition of said motion. (Doc. 46). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### II. Factual Background

Plaintiff is an African-American male who was employed by the City as a firefighter. In 2014, Plaintiff suffered an injury while working as a firefighter and did not return to work. On December 4, 2015, Plaintiff's one year of maintenance of salary benefits outlined in Section 12.2 of the Collective Bargaining Agreement ("CBA") and the Illinois Public Employee Disability Act ("PEDA"), 5 ILCS 345/1 *et seq.* elapsed. The Local 53 of the International Association of Fire Fighters

("Union") wrote the City requesting that Plaintiff be allowed to utilize his accumulated sick leave, vacation, etc., as a supplement to his workers' compensation benefits, but the City denied the request.

On February 13, 2017, Plaintiff filed his one-count Complaint (Doc. 1) alleging that he was discriminated against because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e-5(f)(1) and (3). In his Complaint, Plaintiff sets forth the following relevant facts: on December 6, the Union wrote to Fire Chief Tom Pour ("Fire Chief") requesting that Plaintiff be allowed to utilize his accrued sick leave in accordance with Section 14.3 of the CBA to supplement workers' compensation benefits that were being paid pursuant to 820 ILCS 305/8(b); on or about December 11, the Fire Chief wrote Plaintiff informing him that he would not be allowed to utilize his sick time as requested and City had terminated Plaintiff's employment effective December 5, 2015; on or about January 20, 2016, City rescinded its termination announcement but refused to allow Plaintiff to exercise his right to use accumulated sick leave to supplement workers' compensation benefits during his absence; Plaintiff is African American; and, white employees of the City have been permitted to utilize sick leave either in lieu of or as a supplement to workers' compensation disability benefits. (Doc. 1).

Thereinafter, on March 16, 2018, City filed a Motion for Summary Judgment (Doc. 42) arguing that: (1) the nature of this dispute is distinct from the discriminatory conduct Title VII acts to prevent because the City's actions related

to Plaintiff were part of an ongoing dispute between the City and the Union over the terms of the CBA; (2) the Plaintiff has failed to demonstrate a prima facie case of discrimination on the allegations of the complaint. Specifically, under the *McDonnell Douglas* test, Plaintiff has failed to prove he suffered an adverse employment action and similarly situated others not in his protected class received more favorable treatment; (3) the City's response to the Union was based on legitimate, non-discriminatory reasons. Specifically, the City acted with the legitimate, non-discriminatory intent of advocating its stance in the ongoing dispute over the interpretation of the CBA; and, (4) the Complaint does not allege, and the record does not support, any other adverse employment action. (Doc. 42).

Thereinafter, on April 26, 2018, Plaintiff filed a response and objection ("Brief") (Doc. 46) to City's Motion for Summary Judgment (Doc. 42) arguing that: (1) Plaintiff stated a prima facie case for discrimination under the burden of evidence standard introduced in *Ortiz*[1]. Specifically, Plaintiff argues that "despite compromising liberally with the Union with regard to two white firefighters, the [City] demands strict and literal interpretation of the CBA in its denial of an identical grievance filed by [Plaintiff], a black firefighter." (Doc. 47, pg. 15). Plaintiff further contends that "[t]his ridged and brittle reading of the correspondence exchanged in the course of representing these firefighters creates an issue of fact." *Id.* at pg. 16; and, (2) Plaintiff has stated a prima facie case

---

[1] In *Ortiz v. Werner Enterprises, Inc.*, the court did away with the then longstanding "direct" or "indirect" dichotomy of evidence for employment discrimination cases in Illinois. 834 F.3d 760, 766 (7th Cir. 2016). Rather, the court instead ruled that "all evidence belongs in a single pile and must be evaluated as a whole." *Id.*

under the *McDonnell Douglas* framework. First, Plaintiff underwent an adverse employment action because he was "denied the ability to fairly and equitably utilize his accrued leave in the same manner which other employees were permitted." *Id.* at pg. 18. Second, Plaintiff was similarly situated to other employees who were permitted to use sick leave because all three firefighters reported to the Fire Chief, all three firefighters were subject to the CBA between the City and the Union, and all three firefighters were on identical leave under identical circumstances. *Id.* at pg. 19. In sum, Plaintiff argues that he has far exceeded the low bar needed to reach to survive City's Motion for Summary Judgment.

Thereinafter, on May 10, 2018, City filed its reply (Doc. 48) to Plaintiff's response and objection (Doc. 46) arguing in part that Plaintiff fails to demonstrate a prima facie showing of discrimination because "[t]o the extent Plaintiff was similarly situated to other employees he was treated similarly." (Doc. 48, pg. 2). City further contends that:

> Plaintiff requested that he be allowed to use his accumulated sick leave as a supplement to workers' compensation benefits, and this was denied. Captain Kern requested that he be allowed to supplement, and this was denied. Battalion Chief Becker requested that he be allowed to supplement, and this was denied.

*Id.*

In sum, City contends that Plaintiff's response and brief in opposition (Doc. 47) of City's Motion for Summary Judgment rests "on an unsupported legal

theory and then attempts to support application of the theory with factual assertions that are belied by the record." (Doc. 48, pg. 5).

### III. Applicable Law

**A. Standard of Review – Summary Judgment**

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the

evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). If genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

**B. Standard of Review – Employment Discrimination**

Plaintiff's claims of racial discrimination under Title VII invoke the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). In *Ortiz*, the court eliminated the then longstanding "direct" or "indirect" dichotomy of evidence for employment discrimination cases in Illinois. 834 F.3d at 766. The court replaced the "rat's nest surplus of 'tests'" with a single issue: "whether the evidence would permit a reasonable factfinder to conclude that plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765-66. The *Ortiz* court

noted that its decision did "not concern *McDonnell Douglas* or any burden-shifting framework." *Id.* at 766.

Under the *McDonnell Douglas* test to establish a prima facie case of discrimination, a plaintiff must offer evidence that: (1) he is a member of a protected class, (2) his job performance met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than plaintiff. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (citation omitted). Once a prima facie case is established, a presumption of discrimination is triggered. The burden then shifts to "the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). When the employer presents a legitimate, nondiscriminatory reason, the burden shifts back to plaintiff, who must present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804.

### IV. Analysis

Plaintiff alleges that City discriminated against him on the basis of his race in violation of Title VII. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42

U.S.C. § 2000e-2. Therefore, we will discuss Plaintiff's race discrimination claim within the *Ortiz* decision and *McDonnell-Douglas* framework.

Plaintiff alleges that he suffered an adverse employment action when he was "denied [by City] the ability to fairly and equitably utilize his accrued leave in the same manner which other employees were permitted." (Doc. 47, pg. 18). It is undisputed that Plaintiff is a member of a protected class because he is African American. It also is undisputed that Plaintiff was meeting his employer's legitimate expectations. We look to whether Plaintiff suffered an adverse employment action, whether a situated individual who was not in the protected class was treated more favorably than Plaintiff, and whether City's reason for terminating Plaintiff was a pretext for discrimination. We also look at the evidence as a whole to determine whether a reasonable juror could conclude that Plaintiff was discriminated against based on his race.

**A. Adverse Employment Action**

Plaintiff has not demonstrated that he suffered an adverse employment action when City refused Plaintiff's request to use his accrued leave in the same manner as other employees. A materially adverse employment action is a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel–Indiana,* 546 F.3d 832, 838 (7th Cir. 2008), *quoting Bell v. E.P.A.,* 232 F.3d 546, 555 (7th Cir. 2000).

In his Complaint, Plaintiff alleges that he was denied the ability to fairly and equitably utilize his accrued leave in the same manner which other employees were permitted. The Court declines to consider the denial of benefits not available under the terms of the CBA as an adverse employment action. *See Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901, 902 (7th Cir.2003) (noting that, although the "definition of an adverse employment action is generous," an employee "must show some quantitative or qualitative change in the terms or conditions of his employment" or some sort of "real harm"). The record as a whole indicates that City has consistently relied on the CBA to deny employee requests to use accrued leave to supplement their workers' compensation benefits. Because the City's denial of Plaintiff's request did not cause a significant change in his benefits under the CBA, Plaintiff did not suffer a material adverse employment action.

**B. Comparator**

Plaintiff has not demonstrated that another similarly situated non-African American employee received more favorable treatment than Plaintiff. The Seventh Circuit has identified comparators to assist the fact finder in determining whether employees are similarly situated: (1) that the employees "dealt with the same supervisor;" (2) that the "employees were subject to the same standards;" and (3) that the employees "engaged in similar conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir.

2002). "The purpose of the 'similarly-situated' comparator is to ensure that all other variables are discounted so that discrimination can be inferred. 'If an employer takes an action against one employee in a protected class but not another outside that class, and all else is equal between the comparators, we can infer discrimination, at least provisionally at the prima facie stage of the analysis.'" *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) (quoting *Silverman v. Bd. of Educ.,* 637 F.3d 729, 742 (7th Cir. 2011)).

Plaintiff alleges that two similarly-situated comparators received more favorable treatment. It is undisputed that Plaintiff was similarly situated to Captain Mike Kern ("Kern") and Battalion Chief Bruce Becker ("Becker"). We look to whether Kern and Becker received more favorable treatment as compared to Plaintiff.

1. **Captain Mike Kern**

The City treated Captain Kern and the Plaintiff the same with respect to each party's request to use sick time as a supplement. Plaintiff alleges in his Complaint that "[w]hite employees of the CITY have been permitted to utilize accumulated sick leave and vacation time either in lieu of or as a supplement to workers' compensation disability benefits." (Doc. 1, pg. 4). The record does not support the above assertion because the City clearly denied Captain Kern's request to use his sick time as a *supplement* to workers' compensation benefits. On May 16, 2010, the Union wrote Fire Chief Scott Lanxon requesting that Captain Kern, upon expiration of his one year of benefits, be placed on workers'

compensation and be permitted to use his sick time as a supplement, citing to 14.3 of the CBA. (Doc. 40-1). In its May 24 response, the City denied the Union's request citing to 12.2 of the CBA. (Doc. 40-2).

## 2. Plaintiff

Similar to its May 2010 request on behalf of Captain Kern, on December 6, 2015, the Union sent correspondence to the City requesting that Plaintiff be allowed to utilize his accumulated time (*e.g.* sick leave, vacation, etc.) as a supplement to workers' compensation benefits. (Doc. 39-3). In its responsive correspondence denying the request, the City stated:

> Based upon City policy, because you have not received a full-duty release to return to work within one year, your employment with the City is hereby terminated effective December 5, 2015. From that date, you will be paid temporary total disability benefits equaling 66 2/3% of your average weekly wage pursuant to the applicable provisions of the Illinois Workers' Compensation Act, plus a lump-sum payment of $10,355.69 for accrued vacation and personal time pursuant to the applicable provisions of the aforementioned Collective Bargaining Agreement.

(Doc. 39-2).

## 3. Battalion Chief Bruce Becker

Similar to its December 6, 2015 request on behalf of Plaintiff, in June 2016, the Union requested that Becker be allowed to use his accumulated time as a supplement which the City denied. In a June 20, 2016 correspondence to the City, the Union proposed that Becker be allowed to use his accumulated time in lieu of workers' compensation benefits. (Doc. 43-5). In his Brief, Plaintiff argues that:

> The Defendant CITY points to excerpts from a series of correspondence between the CITY and Local 53 in which white Battalion Chief Becker offered in writing to accept the use of his sick time instead of workers' compensation. This ridged and brittle reading of the correspondence exchanged in the course of representing these firefighters creates an issue of fact.

(Doc. 47, pg. 16).

The Court declines to see how the differing requests made by the Union on behalf of Plaintiff and Becker creates an issue of fact. The Union requested that Plaintiff be allowed to use his accumulated time as a supplement which the City denied. The Union requested that Becker be allowed to use his accumulated time as a supplement which the City denied. After being denied, the Union then proposed that Becker be allowed to use his accumulated time in lieu of workers' compensation benefits; the Union did not offer this proposal to the City on behalf of Plaintiff. When Plaintiff and Becker were similarly situated in each requesting to use accumulated time as a supplement, the City treated them in the same manner by denying both requests.

The Plaintiff further argues that:

> Vice President Maine disputes that the union limited the remedy available to any of these firefighters using sick time to supplement workers' compensation benefits. Maine essentially testified that the position of the union with respect to HORNE was identical to the position it took with Kern, HORNE, and ultimately Becker.

*Id.* at 16.

In his deposition, Vice President Maine stated that the Union, in its January 27, 2016 correspondence to the City, did not present a remedy proposal requesting that Plaintiff be allowed to use his sick time in lieu of workers' compensation

benefits. In contrast, in its June 20, 2016 correspondence to the City, the Union clearly requested such a remedy for Becker:

> Local 53 sets forth remedy as such: Allow Battalion Chief Becker to choose whether he wishes to use his accumulated sick leave to extend his full time benefits until such time that it is exhausted or his duty disability is resolved, or whether he wishes to remain receiving worker's compensation benefits.

(Doc. 40-5).

To further the point, in its August 10, 2016 correspondence to the City, the Union reiterated its position regarding Plaintiff by stating:

> Local 53 sets forth a resolution as follows: The Local and Firefighter Horne be made whole by ensuring the proper sick time and vacation time has been accruing since the expiration of his PEDA benefits, and allow him the choice to utilize his sick time (beginning at the period at which he began to receive partial pay) to *supplement* to full pay.

(Doc. 43-7) (emphasis added).
Importantly, the Union conceded that requesting that Plaintiff be allowed to use his sick time "in lieu of" his workers' compensation benefits would have placed the Union in a weaker strategic position. (Doc. 42-7). Based on the record as a whole and the facts that distinguish Becker from Plaintiff, the Court cannot conclude that Becker received more favorable treatment, and thus, cannot infer discrimination.

## C. Pretext

Plaintiff cannot show that City's reason for denying his request to use his sick time as a supplement was pretextual. As the Seventh Circuit has explained, "'Pretext' . . . neither in ordinary language nor in the law does it mean a mistake. It means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans*

*Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Under a typical employment discrimination case, if an employer articulates a legitimate, nondiscriminatory reason the burden is shifted back to the employee to "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

Plaintiff has not presented sufficient evidence to prove City denied his request for any reason other than the City's intent of advocating its stance in its ongoing dispute with the Union over the meaning of the terms of the CBA.

**D. Considering the Evidence as a Whole**

A reasonable factfinder could not conclude that Plaintiff's request to use his sick time to supplement his workers' compensation benefit would have been granted if he were of a different race. The record clearly indicates that there is an ongoing dispute between the City and the Union over the terms of the CBA. Therefore, viewing the evidence as a whole, Plaintiff has failed to prove that his request was denied due to his race and no reasonable juror could conclude that the request was denied because of his race.

<h2 style="text-align:center">V. Conclusion</h2>

In sum, the Court concludes that Plaintiff has failed to make a sufficient showing of the essential elements of discrimination under Title VII. The Court believes that summary judgment is appropriate here because the record supports such a finding.

Accordingly, the Court finds that there are no genuine issues of material fact and **GRANTS** Defendant's Motion for Summary Judgment. Plaintiff's claim under Title VII is **DISMISSED**, **WITH PREJUDICE**.

**IT IS SO ORDERED.**

Judge Herndon
2018.09.24 14:38:04
-05'00'

**United States District Judge**